CONN LAW, PC
ELLIOT CONN          Bar No. 279920
elliot@connlawpc.com
354 Pine Street, 5th Floor
San Francisco, CA 94104
Telephone: (415) 417-2780
Facsimile: (415) 358-4941

ADELPHI LAW
JOSHUA WHITAKER (*pro hac vice* admission pending)
whitaker@adelphilaw.com
2306 Wineberry Terrace
Baltimore, MD 21209
Telephone: (888) 367-0383
Facsimile: (888) 367-0383

Attorneys for Plaintiffs Hadona Diep, Ryumei Nagao, and the putative class

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| HADONA DIEP and RYUMEI NAGAO, individually, on behalf of all others similarly situated, and on behalf of the general public | Case No. 4:21-cv-10063-PJH |
| | CLASS ACTION |
| Plaintiffs. | **FIRST AMENDED COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF** |
| vs. | **DEMAND FOR JURY TRIAL** |
| APPLE, INC. | |
| Defendant. _____/ | |

Pursuant to Federal Rule of Civil Procedure Rule 15(a)(2), and with the written consent of Defendant Apple, Inc. ("Apple" or "Defendant"), Plaintiffs Hadona Diep ("Diep") and Ryumei Nagao ("Nagao"), on behalf of themselves and all others similarly situated, and on behalf of the general public, hereby amend their complaint, and complain against the Defendant, and in support thereof state:

//

**INTRODUCTION**

1.      This action is a class action suit under the federal and state laws of the United States, seeking relief for the Defendant's breaches of those same laws, in participating in and or allowing "hacking" and "breach" of financial account information and actual theft of personal financial assets, by authorizing a malicious application in the "App Store" and maintaining the same, despite knowledge of the criminal activity, and the Defendant's further failure to notify Plaintiffs and Class Members that their financial information had been compromised.

2.      Specifically, Plaintiffs and Class Members relied on Apple's long-standing campaign of representing that its App Store is "a safe and trusted place" and downloaded a "Toast Plus" application to store cryptocurrency. Unknown to Plaintiffs and Class Members, in actuality, the Toast Plus application was a "spoofing" or "phishing" program created for the sole purpose of stealing cryptocurrency, by obtaining consumers' cryptocurrency account information and thereafter routing the same to the hackers' personal accounts. Not knowing this, and relying on Apple's express representations that its Apps were safe, Plaintiffs and Class Members transferred cryptocurrency to Toast Plus, which was subsequently stolen. And despite numerous complaints regarding the fraudulent nature of the Toast Plus application, Apple allowed it to remain in the App Store and failed to warn Plaintiffs and Class Members of the danger of the application.

3.      As a result of the Defendant's failure to take appropriate corrective or remedial action, and concealment and affirmative misrepresentation of the existence of this dangerous "spoofing" application from the App Store, Defendant has caused Plaintiffs and members of the Class to suffer economic losses and bear expenses and costs they otherwise should not have had to bear in violation of the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C § 1030, *et seq.*, the Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. § 2510, *et seq.*, the Consumers Legal Remedies Act ("CLRA"), California Civil Code § 1750, *et seq.*, California's Unfair Competition Law ("UCL"), California Business and Professions Code § 17200, *et seq.*, and other laws.

4.      By virtue of this class action, Plaintiffs seek to enjoin Defendant's unlawful and unfair practices and to require the Defendant to compensate Plaintiffs and members of the Class for the losses they have incurred. Plaintiffs also seek attorneys' fees, costs, and expenses.

## PARTIES

5.      Plaintiff Hadona Diep is an individual, over 18 years of age, and a resident of the State of Maryland.

6.      Plaintiff Ryumei Nagao is an individual, over 18 years of age, and a resident of Japan.

7.      Defendant Apple, Inc. is California corporation with its principal place of business at One Apple Park Way, Cupertino, California 95014.

## JURISDICTION AND VENUE

8.      Jurisdiction is proper in the Court as the Plaintiffs brings Federal causes of action pursuant to 18 U.S.C. § 1030(g) and 47 U.S.C. § 230(e)(4).  This Court has supplemental jurisdiction over the State law claims pursuant to 28 U.S.C. § 1367.

9.      Jurisdiction is further proper under the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because, on information and belief, the proposed Class(es) consists of 100 or more members; the amount in controversy exceeds $5,000,000, exclusive of costs and interest; and minimal diversity exists.

10.      This Court may exercise personal jurisdiction over the Defendant, who has availed itself of the jurisdiction of this Court through acts and omissions, including but not limited to, having its principal place of business in this District, advertising its services in this District, selling products and services to consumers in this District, and by otherwise conducting business in this District; furthermore, various agreements between the Parties and the Class select the Courts of this State as the proper forum for all disputes.

11.      Venue is therefore proper in this forum pursuant to 28 U.S.C. § 1391(b), and further, as the Defendant is located in this judicial district and/or a substantial part of the acts or omissions giving rise to the claims herein occurred in the same.

FIRST AMENDED CLASS ACTION COMPLAINT

## GENERAL ALLEGATIONS

12. Both Plaintiffs use computers and or mobile devices in interstate commerce.

13. Apple is the largest, or at least one of the largest, mobile and tablet application providers in the world, through its universally-known "App Store."

14. Apple itself describes the App Store to consumers as, for well over a decade, having:

> proved to be a safe and trusted place to discover and download apps. But the App Store is more than just a storefront — it's an innovative destination focused on bringing you amazing experiences. And a big part of those experiences is ensuring that the apps we offer are held to the highest standards for privacy, security, and content. Because we offer nearly two million apps — and we want you to feel good about using every single one of them.[1]

15. In 2007, Steve Jobs stated that Apple's mission in creating what would become the App Store was to create "an advanced system which will offer developers broad access to natively program the iPhone's amazing software platform while at the same time protecting users from malicious programs."[2]

16. Both Plaintiffs, and, on information and belief, the Class Members, saw these representations of safety and security, or ones materially similar in content to them.

17. Furthermore, these representations of safety and security in the applications offered in the App Store have been made continuously for over a decade, and was a focal point of widespread advertising and marketing representations made by Apple.

18. Apple controls what applications may be sold or provided to consumers through the App Store by a rigorous vetting process that involves provision of the proposed application's purpose and a copy of the application itself and any relevant source code, users' guides, and software documentation.[3]

---

1    https://www.apple.com/app-store/ (last accessed September 3, 2021 at 5:31 PM).
2    Adam Engst, "Steve Jobs's iPhone SDK Letter," Oct. 17, 2007, at https://tidbits.com/2007/10/17/steve-jobss-iphone-sdk-letter/ (last accessed Mar. 13, 2022, at 10:11 PM).
3    *See, e.g.,* https://developer.apple.com/app-store/review/guidelines/#business (last accessed September 3, 2021, at 1:27 PM).

19.     Apple customers in fact have no other practical or convenient manner in which to download applications for their iPhones or iPads, as Apple maintains rigorous control over applications that can be placed on their devices.

20.     The monopolistic App Store therefore generates tens of billions in dollars of revenue per year for Apple, through Apple's charging of a 70/30 percent split on all revenue generated through applications downloaded through the App Store, whether through fees for downloads, subscriptions, in-app purchases, or service fees.[4]

21.     Furthermore, even when Apple does not directly profit from an application downloaded from the App Store, drawing consumers to its selling forum, as opposed to other fora, has considerable business advantage to Apple, as it encourages consumers to purchase Apple products and dissuades consumers from using other devices.

22.     Because Plaintiffs knew, or at least thought they knew, that Apple thoroughly vets applications before it allowed them on the App Store, Plaintiffs each downloaded the application known as Toast Plus from the Apple App Store.

23.     Plaintiffs each believed that Toast Plus was a version of Toast Wallet, a well-known cryptocurrency wallet, as the names were similar and the logo used for the application in the App Store was the same or nearly identical; Apple allowed the developer to use a logo that mimicked the real Toast Wallet without any objection.

**Plaintiff Hadona Diep's Experience**

24.     On or about January 2, 2018, Plaintiff Diep caused approximately 474 Ripple ("XRP") cryptocurrency coins to be transferred from the Bittrex cryptocurrency exchange to a secure cryptocurrency wallet, called Rippex.

25.     Rippex shut down February 2nd, 2018; however, Plaintiff Diep could still access

---

4     *See, e.g.,* https://www.cnbc.com/2021/01/08/apples-app-store-had-gross-sales-around-64-billion-in-2020.html (last accessed September 3, 2021, at 5:34PM); https://www.marketwatch.com/story/how-profitable-is-apples-app-store-even-a-landmark-antitrust-trial-couldnt-tell-us-11622224506; (last accessed September 3, 2021, at 5:35PM); https://www.theverge.com/2019/3/20/18273179/apple-icloud-itunes-app-store-music-services-businesses (last accessed September 3, 2021, at 5:33PM).

her coins from any secure wallet.  Plaintiff Diep thereafter linked her private XRP key, or a seed phrase, into Toast Plus in March of 2021.

26.    As Plaintiff Diep intended to hold the XRP as an investment and not to actively trade it, she did not check the Toast Wallet Plus application after entering her seed phrase into it.

27.    In August of 2021, Plaintiff Diep checked her account on Toast Plus, and discovered that not only did she have no XRP in the Wallet, her account was "deleted" on March 3, 2021.

28.    At no time did Apple contact Plaintiff Diep to tell her that she had downloaded a malicious spoofing application.

29.    Plaintiff Diep thereupon began investigating the matter, and discovered that Toast Plus was not in fact a version of the legitimate Toast Wallet application, but was instead a "spoofing" or "phishing" program created for the sole purpose of stealing cryptocurrency, by obtaining consumers' cryptocurrency account information and thereafter routing the same to the hackers' personal accounts.

30.    Plaintiff Diep took the following steps to investigate the theft of her property: contacting or attempting to contact Toast Plus; investigating Toast Plus through online resources; contacting Apple; contacting the Federal Trade Commission and the Federal Bureau of Investigations through the "IC3" cyber-crime web-based reporting portal.; and identifying co-conspirators involved in the fraudulent acts through online research.

**Plaintiff Ryumei Nagao's Experience**

31.    In December of 2020, Plaintiff Nagao caused some 1,003,282.5 XRP tokens to be deposited into the Toast Plus application, through his iPhone.

32.    Plaintiff Nagao noticed that the XRP appeared to disappear immediately, but thought that he made a mistake; he later learned that it had been stolen.

33.    At no time did Apple contact Plaintiff Nagao to tell him that he had downloaded a malicious spoofing application.

//

FIRST AMENDED CLASS ACTION COMPLAINT

34.    In April of 2021, Plaintiff Nagao learned that he did not make a mistake and that in fact his XRP had been stolen.  Plaintiff Nagao contacted Apple and informed them of the crime; he also contacted the Federal Bureau of Investigations through the "IC3" cyber-crime web-based reporting portal.

**Both Plaintiffs' Experiences**

35.    While the App Store does have terms and conditions, including limitations on liability, those terms and conditions are the product of adhesion, in that consumers have no other practical ability to access applications for the iPhones and iPads if they do not use the App Store; those terms and conditions are therefore not applicable to this case.

36.    Plaintiffs have no power to negotiate any terms whatsoever and no other source from which to get applications for her Apple products, and or many of the terms of which are unenforceable as being in violation of public policy.

37.    Furthermore, those contractual terms are expressly exempted when there are State laws that either forbid such contractual terms or legislation that otherwise controls the subject matter.

38.    Furthermore, the fact that Toast Plus was not an actual application, but instead a medium for the commission of fraud, makes any existing contract using it as subject matter void, as there was a failure of consideration and or mistake of the same, as what was requested by Plaintiffs and Class Members was not provided by Defendant.

**CLASS ACTION ALLEGATIONS**

39.    Plaintiffs bring this action on behalf of themselves and as a class action, pursuant to the provisions of Federal Rules of Civil Procedure Rules 23(a), (b)(2), and (b)(3), on behalf of the classes identified herein:

**The Class**

All persons who downloaded or otherwise used Toast Plus from the Apple Store within the relevant statutory period and suffered actual loss of cryptocurrency as a result, regardless of the amount of lost cryptocurrency.

FIRST AMENDED CLASS ACTION COMPLAINT

**The Maryland Subclass**

All Maryland residents who downloaded or otherwise used Toast Plus from the Apple Store within the relevant statutory period and suffered actual loss of cryptocurrency as a result, regardless of the amount of lost cryptocurrency.

40.    Excluded from the Class are Defendant and its subsidiaries and related entities; all persons who make a timely election to be excluded from the Classes; governmental entities; and any judge to whom this case is assigned and his/her immediate family. Plaintiffs reserve the right to revise the Class definitions based upon information learned through discovery.

41.    Certification of Plaintiffs' claims for class-wide treatment is appropriate because Plaintiffs can prove the elements of their claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claim.

42.    This action has been brought and may be properly maintained on behalf of the Class proposed herein under Federal Rule of Civil Procedure 23 for the following reasons:

<u>**Numerosity**</u>

43.    Pursuant to Federal Rule of Civil Procedure 23(a)(1), the members of the Classes are so numerous and geographically dispersed that individual joinder of all Class members is impracticable. While Plaintiffs are informed and believe that there are at least hundreds or thousands of members of the Classes, the precise number of Class members is unknown to Plaintiffs, but may be ascertained from Defendant's books and records. Class members may effectively and efficiently be notified of the pendency of this action by recognized, Court-approved dissemination methods, which may include U.S. mail, electronic mail, Internet postings, and/or publication.

<u>**Commonality and Predominance**</u>

44.    Pursuant to Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3), this action involves common questions of law and fact, which predominate over any questions affecting individual Class members, including, without limitation:

a. Whether Defendant engaged in the conduct alleged herein;

b. Whether Defendant's conduct constituted violations of federal and state computer

fraud, wiretap, data privacy, consumer protection, contract, and tort law;

c. Whether Plaintiffs and the other Class members are entitled to damages and other monetary relief and, if so, in what amount.

Typicality

45.    Plaintiffs' claims are typical of the other Class members' claims because, among other things, all Class members were comparably injured through Defendants' wrongful conduct as described above.

Adequacy

46.    Plaintiffs are adequate Class representatives because their interests do not conflict with the interests of the other members of the Classes she seeks to represent; Plaintiffs have retained experienced counsel competent in complex multi-party and class action litigation, and Plaintiffs intend to prosecute this action vigorously. The Classes' interests will be fairly and adequately protected by Plaintiffs and their counsel.

Superiority

47.    It is well-recognized that class action litigation is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this action as a class action. The damages suffered by Plaintiffs and the other Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant, so it would be impracticable for members of the proposed Class and Maryland Subclass to individually seek redress from the courts.  Even if the individual Class members could afford to undertake individual litigation, such individual claims would overwhelm the court system should they do so.  Furthermore, individual litigation creates potential for inconsistent or contradictory judgments, and increases delay and expense to the parties and to the court system. A class action in this matter would present fewer administrative difficulties, would be more efficient, and would enhance the interests of consistent and fair justice in this matter.

//

**COUNT I**
**Violations of the Computer Fraud and Abuse Act,**
**18 U.S.C § 1030, *et seq.***
***(on behalf of Plaintiffs and the Class)***

48.     Plaintiffs repeat and incorporate herein by reference the allegations in the preceding paragraphs of this Complaint, as if set forth fully herein.

49.     Plaintiffs' (and each Class Members') computers are "protected computer[s] . . . which [are] used in interstate commerce and/or communication" within the meaning of 18 U.S.C. § 1030(e)(2)(B).

50.     The Toast Plus application's sole purpose is to entice consumers to divulge their cryptocurrency account information, by mimicking an established cryptocurrency wallet in name, mark, and design, thereby allowing hackers to steal that cryptocurrency.

51.     The Defendant, having examined the Toast Plus application prior to authorizing it for distribution on the App Store, knew its purpose.

52.     To the extent that Defendant did not know the true purpose of Toast Plus prior to its authorization for distribution on the App Store, Defendant came to know its true purpose prior to Plaintiffs and the Class Members downloading Toast Plus.

53.     By allowing the Toast Plus application to be distributed on the App Store, Defendant violated the Computer Fraud and Abuse Act, in that Defendant

- intentionally accessed or caused Plaintiffs' and Class Members' computers to be accessed without authorization or exceeded authorized access, through that Toast Plus application, and thereby obtained information from those protected computers; and or

- knowingly and with intent to defraud, accessed or caused Plaintiffs' and Class Members' computers, protected computers, to be accessed, without authorization, and or exceeded authorized access, through the Toast Plus application, and by means of such conduct furthers the intended fraud and obtained something of value, to wit, Plaintiffs' cryptocurrency, and or

//

- intentionally accessed or caused Plaintiffs' and Class Members' computers, which are protected computers, to be accessed, without authorization, and as a result of such conduct, caused damage and loss, and or

- conspired with others to commit or attempt to commit those acts.

54.    These acts and omissions occurred within two years of the date of this filing, or two years of the date of Plaintiffs' discovery of the same.

55.    Plaintiff Diep personally has suffered more than $5,000 in direct consequential economic damages as a result of Defendant's acts and omissions, in that she lost cryptocurrency of value, and has spent her time investigating the source and method of the fraud, determining who was responsible, contacting law enforcement agencies, and communicating with Defendant to attempt to investigate and remediate the fraud, to no avail, and conferring with legal counsel on the fraud and any remedies.

56.    Plaintiff Nagao personally suffered more than $500,000 in direct consequential economic damages as a result of Defendant's acts and omissions, in that he lost cryptocurrency of value, and has spent his time investigating the source and method of the fraud, determining who was responsible, contacting law enforcement agencies, and communicating with Defendant to attempt to investigate and remediate the fraud, to no avail, and conferring with legal counsel on the fraud and any remedies.

57.    Therefore, Plaintiffs Diep requests entry of judgment in her and the Classes' favor against Defendant for violations of the CFAA, in the amount of $5,000, or actual damages, including lost cryptocurrency, lost value of her time in investigating and attempting to seek resolution of her losses, and costs of bringing this suit, to be demonstrated at trial.

58.    Therefore, Plaintiff Nagao requests entry of judgment in his and the Classes' favor against Defendant for violations of the CFAA, in the amount of $500,000, or actual damages, including lost cryptocurrency, lost value of his time in investigating and attempting to seek resolution of his losses, and costs of bringing this suit, to be demonstrated at trial.

WHEREFORE, Plaintiffs pray for the relief set forth below.

**COUNT II**
**Violations of the Electronic Communications Privacy Act,**
**18 U.S.C. § 2510, *et seq.***
***(on behalf of Plaintiffs and the Class)***

59.    Plaintiffs repeat and incorporate herein by reference the allegations in the preceding paragraphs of this Complaint, as if set forth fully herein.

60.    The Electronic Communications Privacy Act of 1986, 18 U.S.C. § 2510 ("ECPA"), regulates wire and electronic communications interception and interception of oral communications, and makes it unlawful for a person to "willfully intercept [], endeavor [] to intercept, or procure . . . any other person to intercept or endeavor to intercept any wire, oral, or electronic communication," within the meaning of 18 U.S.C. § 2511(1).

61.    By intentionally allowing the Toast Plus application distributed through the App Store, Defendant violated 18 U.S.C. § 2511 by intentionally acquiring and/or intercepting, by device or otherwise, Plaintiffs' and Class members' electronic communications, without knowledge, consent, or authorization.

62.    The contents of data transmissions from and to Plaintiffs' and Class Members' personal computers constitute "electronic communications" within the meaning of 18 U.S.C. § 2510.

63.    Plaintiffs and Class Members each individually qualify as a "person whose . . . electronic communication is intercepted . . . or intentionally used in violation of this chapter" under 18 U.S.C. § 2520.

64.    Through the Toast Plus application, Defendant violated 18 U.S.C. § 2511(1)(a) by intentionally intercepting, endeavoring to intercept, or procuring any other person to intercept or endeavor to intercept Plaintiffs' and Class Members' electronic communications.

65.    Defendant further violated 18 U.S.C. § 2511(1)(c) by intentionally disclosing, or endeavoring to disclose, to any other person, the contents of Plaintiffs' and Class Members' electronic communications, knowing or having reason to know that the information was obtained through the interception of Plaintiffs' and Class Members' electronic communications.

//

66.     Defendant further violated 18 U.S.C. § 2511(1)(d) by intentionally using or endeavoring to use, the contents of Plaintiffs' and Class Members' electronic communications, knowing of having reason to know that the information obtained through the interception of Plaintiffs' and Class Members' electronic communications.

67.     Defendant's intentional interception of these electronic communications was without Plaintiffs' or the Class Members' knowledge, consent, or authorization.

68.     Defendant's actions further have no legal justification exempting it from liability.

69.     Defendant intentionally used such electronic communications, with knowledge, or having reason to know, that the electronic communications were obtained through interception, for an unlawful purpose.

70.     Defendant unlawfully accessed and used, and voluntarily disclosed, the contents of the intercepted communications to enhance their profitability and revenue.

71.     Defendant is liable directly and/or vicariously for this cause of action.

72.     Plaintiffs therefore seeks full legal and equitable remedy under the EPCA, including such preliminary and other equitable or declaratory relief as may be appropriate, for damages consistent with subsection (c) of that section to be proven at trial, punitive damages to be proven at trial, reasonable attorney's fees, and other litigation costs incurred.

73.     Plaintiffs and Class Members have suffered direct loss by reason of these violations, including, without limitation, loss of present-day value of cryptocurrency, loss of investment value of the same, loss of time in investigating the conduct, and violations of the right of privacy.

74.     Plaintiffs and the Class Members are entitled to statutory damages of the greater of $10,000 or $100 per day for each day of violation, actual and punitive damages, reasonable attorneys' fees, and Defendant's profits obtained from the above-described violations.

75.     Furthermore, unless restrained and enjoined, Defendant will continue to commit such acts.  Plaintiffs' remedy at law is not adequate to compensate it for these inflicted and threatened injuries, entitling Plaintiffs to remedies including injunctive relief as provided by 18

U.S.C. § 2510.

76.    Plaintiffs therefore request that Defendant be enjoined and restrained from distributing such "phishing" or "spoofing" applications in the App Store, and that this Court retain jurisdiction over this matter to monitor compliance with such an order.

WHEREFORE, Plaintiffs pray for the relief set forth below.

**COUNT III**
**Violations of the California Consumer Privacy Act of 2018,**
**Cal. Civ. Code § 1798.100, *et seq*.**
***(on behalf of Plaintiffs and the Class)***

77.    Plaintiffs repeat and incorporate herein by reference the allegations in the preceding paragraphs of this Complaint, as if set forth fully herein.

78.    The California Consumer Privacy Act of 2018, Cal. Civ. Code § 1798.100, *et seq.* ("CCPA"), creates a private right of action when nonencrypted and nonredacted personal information is subjected to unauthorized access and exfiltration, theft, or disclosure by a company that has failed to maintain reasonable security measures.

79.    The CCPA defines "personal information" as an individual's first name or first initial and his or her last name in combination with any one or more of the following data elements, when either the name or the data elements are not encrypted or redacted: (1) social security number; (2) driver's license number or California ID card number; (3) account number or credit or debit card number, in combination with any required security code, access code or password that would permit access to an individual's financial account; (4) medical information; and/or (5) health insurance information.

80.    Defendant violated § 1798.150 of the CCPA by failing to prevent Plaintiffs' and Class Members' nonencrypted personal information from unauthorized access and exfiltration, theft, or disclosure as a result of Defendant's violations of its duty to implement and maintain reasonable security procedures and practices appropriate to the nature of the information.

81.    Defendant collects consumers' personal information as defined in Cal. Civ. Code § 1798.140.  Defendant therefore has a duty to implement and maintain reasonable security procedures and practices to protect this personal information. As identified herein, Defendant

14
FIRST AMENDED CLASS ACTION COMPLAINT

failed to do so.

82.    As a direct and proximate result of Defendant's acts and omissions, Plaintiffs' and Class Members' personal information, including unencrypted names, emails, XRP keys, seed phrases, and passwords among other information, was subjected to unauthorized access and exfiltration, theft, or disclosure.

83.    Plaintiffs and Class Members seek injunctive or other equitable relief to ensure Defendant hereinafter adequately safeguards customers' personal information by implementing reasonable security procedures and practices.

84.    More than 30 days before bringing this action, Plaintiffs' counsel sent a notice letter to Apple's registered service agent via UPS Next Day Air.

85.    On March 1, Apple responded to Plaintiffs' notice letter, and declined to address Plaintiffs' concerns regarding the data breaches alleged herein.

86.    Plaintiffs therefore requests entry of judgment in their and the Class Members' favor against Defendant for violations of the CCPA, in the amount of actual damages and statutory damages of $750 per customer record subject to the data breaches identified herein.

WHEREFORE, Plaintiffs pray for the relief set forth below.

**COUNT IV**
**Violations of the Unfair Competition Law,**
**Cal. Bus. & Prof. Code § 17200 *et seq.***
***(on behalf of Plaintiffs and the Class)***

87.    Plaintiffs repeat and incorporate herein by reference the allegations in the preceding paragraphs of this Complaint, as if set forth fully herein.

88.    California Business and Professions Code section 17200, *et seq.*, often referred to as the "Unfair Competition Law" or "the UCL," defines unfair competition to include any unlawful, unfair, or fraudulent business act or practice.

89.    The UCL provides that a court may order injunctive relief and restitution as remedies for any violations of the UCL.

90.    Beginning on an exact date unknown to Plaintiffs, but at all times relevant herein and during the four years preceding the filing of the Complaint in this action, Defendant

committed and it continues to commit acts of unfair competition, and or omitted acts that constitute the same, proscribed by the UCL, including the practices alleged in this Complaint.

91.    The business acts, omissions, and practices alleged herein constitute unfair business practices in that said acts and practices offend public policy and are substantially injurious to the public.

92.    The business acts, omissions, and practices alleged in this Complaint violate the public policies expressed in the CCPA, Cal. Civ. Code § 1798.100, *et seq.*

93.    The business acts, omissions, and practices alleged herein above constitute unlawful business practices in that Defendant has violated the CCPA, Cal. Civ. Code § 1798.100, *et seq.*, the Consumer Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.*, and other laws.

94.    The business acts, omissions, and practices alleged herein constitute fraudulent business practices in that said acts and practices are likely to deceive consumers as to their legal rights and obligations, and by use of such deception, may preclude such individuals from exercising legal rights to which they are entitled.

95.    The unlawful, unfair and fraudulent business acts, omissions, and practices of Apple described herein present a continuing threat in that Apple is currently engaging in such acts and practices, and will persist and continue to do so unless and until an injunction is issued by this Court.

96.    Plaintiffs and Class Members have lost money or property, including the cryptocurrency lost. Plaintiffs have in fact directly lost XRP tokens as a result of the Defendant's acts and omissions.

97.    As a direct and proximate result of the acts and practices described herein, Plaintiffs and Class Members have been deprived of money or property. Apple should therefore be ordered to provide full and complete restitution of all amounts taken from Plaintiffs and Class Members.

//

98.    Pursuant to Cal. Business and Professions Code § 17203, Plaintiffs seek an order enjoining Apple from engaging in such acts and practices as hereinabove alleged, and providing appropriate restitution to Plaintiffs and all Class Members.

99.    Pursuant to Cal. Code of Civil Procedure § 1021.5, Plaintiffs seek recovery of attorneys' fees, costs and expenses incurred in the filing and prosecution of this action. Plaintiffs do not seek any relief greater than or different from the relief sought for the Class.

WHEREFORE, Plaintiffs pray for the relief set forth below.

**COUNT V**
**Violations of Consumer Legal Remedies Act,**
**Cal. Civ. Code § 1750, *et seq.***
***(on behalf of Plaintiffs and the Class)***

100.    Plaintiffs repeat and incorporate herein by reference the allegations in the preceding paragraphs of this Complaint, as if set forth fully herein.

101.    At all relevant times:

- The "App Store" and applications available therein are goods or services that Apple has marketed and that Plaintiffs and Class Members purchased for personal, family, or household purpose and, as such, are "goods" and "services" as defined by Cal. Civil Code sections 1761(a), (b);

- Plaintiffs and Class Members are individuals who have used the App store for personal, family or household purposes and, as such, are "consumers" defined in Cal. Civil Code section 1761(d);

- There were agreements between Apple on the one hand and Plaintiffs and Class Members on the other and, as such, their relationship constitutes a "transaction" as that term is defined in Cal. Civ. Code section 1761(e); an

- Apple is a corporation and, as such, is a "person" as that term is defined in Cal. Civ. Code section 1761(c).

102.    In offering apps for download in the App Store, Apple has represented, and will continue to represent, directly or by implication, that applications downloaded are safe. Apple represents that "the App Store has proved to be a safe and trusted place to discover and

17
FIRST AMENDED CLASS ACTION COMPLAINT

download apps," that Apple is "[d]edicated to trust and safety," that "Apps must adhere to our guidelines," that "[e]very week, over 500 dedicated experts around the world review over 100K apps," that "[o]ver 1M submissions rejected for objectionable, harmful, unsafe, or illegal content," and that "[y]ou should never have to worry about inappropriate content."[5]

103.    Notwithstanding these representations, Apple failed to properly vet the Toast Plus application before providing it to the public, failed to warn the public of the actual risks of applications in the App Store, failed to remove Toast Plus from the App Store after learning of its dangerous nature, and failed to warn or notify each Toast Plus user of the danger after learning of the danger itself.

104.    By virtue of this ongoing practice and course of conduct, Apple has violated and will continue to violate section 1770(a)(2) of the CLRA by misrepresenting the source, sponsorship, approval, or certification of goods or services.

105.    By virtue of this ongoing practice and course of conduct, Apple has violated and will continue to violate section 1770(a)(3) of the CLRA by misrepresenting the affiliation, connection, or association with, or certification by, another.

106.    By virtue of this ongoing practice and course of conduct, Apple has violated and will continue to violate section 1770(a)(5) of the CLRA by representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that the person does not have.

107.    By virtue of this ongoing practice and course of conduct, Apple has violated and will continue to violate section 1770(a)(7) of the CLRA by representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another.

108.    By virtue of this ongoing practice and course of conduct, Apple has violated and will continue to violate section 1770(a)(14) of the CLRA by representing that a transaction

---

5 https://www.apple.com/app-store/

confers or involves rights, remedies, or obligations that it does not have or involve, or that are prohibited by law.

109.    By virtue of this ongoing practice and course of conduct, Apple has violated and will continue to violate section 1770(a)(16) of the CLRA by representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not.

110.    Defendant's violations of the CLRA present a continuing threat to Plaintiffs and Class Members in that Defendant continues to engage in the above-referenced acts and practices, and unless enjoined from doing so by this Court, will continue to do so.

111.    In compliance with the provisions of Cal. Civ. Code section 1782, more than 30 days before bringing this claims, Plaintiffs provided notice to Defendant of its violations and provided it with an opportunity to cure its violations. Defendant did not avail itself of this opportunity.

112.    On March 1, Apple responded to Plaintiffs' notice letter, and declined to address Plaintiffs' concerns regarding the data breaches alleged herein.

113.    Accordingly, Plaintiffs seek an order awarding actual damages, equitable relief, as well as an award of attorneys' fees and costs pursuant to Civil Code § 1780, subdivisions (a) and (e).

114.    Plaintiffs are entitled to an award of attorneys' fees and costs pursuant to Cal. Civ. Code § 1780(d).

WHEREFORE, Plaintiffs pray for the relief set forth below.

**COUNT VI**
**Interception of Electronic Communications in**
**Violation of Md. Code Ann.,** *Wiretap & Electronic Surveillance Act* **§ 10-402(a)(1)**
*(on behalf of Plaintiff Diep and the Maryland Subclass)*

115.    Plaintiffs repeat and incorporate herein by reference the allegations in the preceding paragraphs of this Complaint, as if set forth fully herein.

116.    In relevant part, Maryland Code *Wiretap and Electronic Surveillance Act* § 10-402(a) (2006) provides that it is unlawful for any person to:

//

- (1) Willfully intercept, endeavor to intercept, or procure any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication;

- (2) Willfully disclose, or endeavor to disclose, to any other person the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of this subtitle. . . .

117.    Maryland Code § 10-401(3) (2006) provides that "intercept" means "the aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device."

118.    Maryland Code § 10-401(7) (2006) provides that "Contents", when used with respect to any wire, oral, or electronic communication, includes any information concerning the identity of the parties to the communication or the existence, substance, purport, or meaning of that communication."

119.    Defendant is a "person" with the meaning of Maryland Code § 10-402.

120.    On information and belief, Defendant willfully intercepted, and or endeavored to intercept, and or procured others to intercept or endeavor to intercept the "contents" of Plaintiff Diep's and Maryland Subclass Members' internet communications, related records, subscriber identity, or other information, without authorization, in clear violation of Maryland Code, § 10-402(a)(1), by causing the "phishing" Toast Plus application to be published and distributed to Plaintiff Diep and the Maryland Class Members.

121.    Plaintiff Diep and the Maryland Class members have been and are aggrieved by Defendant's above-described willful activity, including loss of present day value of cryptocurrency, loss of investment value of the same, loss of time in investigating the conduct, and violations of the right of privacy.

122.    Pursuant to Md. Code Ann. § 10-410, which provides a civil action for Defendant's above-described willful activity, Plaintiff Diep demands monetary damages of $100 a day for each violation or $1,000, whichever is higher, for Plaintiff and each Maryland Class

member; punitive damages as the Court considers just; and reasonable attorneys' fees and other litigation costs reasonably incurred.

123.    Furthermore, unless restrained and enjoined, Defendant will continue to commit such acts.  Plaintiff Diep's remedy at law is not adequate to compensate her for these inflicted and threatened injuries, entitling Plaintiff to remedies including injunctive relief as provided Maryland Code § 10-410. Plaintiff therefore requests that Defendant be enjoined and restrained from distributing such "phishing" or "spoofing" applications in the App Store, and that this Court retain jurisdiction over this matter to monitor compliance with such an order.

WHEREFORE, Plaintiffs pray for the relief set forth below.

**COUNT VII**
**Disclosure of Electronic Communications in**
**Violation of Md. Code Ann.,** *Wiretap & Electronic Surveillance Act* **§ 10-402(a)(2)**
*(on behalf of Plaintiff Diep and the Maryland Class)*

124.    Plaintiffs repeat and incorporate herein by reference the allegations in the preceding paragraphs of this Complaint, as if set forth fully herein.

125.    Defendant is a "person" with the meaning of Md. Code Ann. § 10-402.

126.    On information and belief, Defendant willfully disclosed, and or endeavored to disclose, and or procured others to disclose or endeavor to disclose the "contents" of Plaintiff Diep' and the Maryland Subclass members' telephone and or internet communications, related records, subscriber identity, or other information, without authorization, in clear violation of Md. Code Ann., § 10-402(a)(2), by causing the "phishing" or "spoofing" Toast Plus application to be published and distributed to Plaintiff Diep and the Maryland Subclass Members.

127.    On information and belief, there is a strong likelihood that Defendant is now engaging in and will continue to engage in the above-described willful activity in clear violation of Md. Code Ann. § 10-402(a)(2), and that likelihood represents a credible threat of immediate future harm.

128.    Plaintiff Diep and the Maryland Subclass members have been and are aggrieved by Defendant's above-described willful activity.

129.    Pursuant to Md. Code Ann. § 10-410, which provides a civil action for Defendant's above-described willful activity, Plaintiff Diep demands monetary damages of $100 a day for each violation or $1,000, whichever is higher, for Plaintiff Diep and each Maryland Subclass member; punitive damages as the Court considers just; and reasonable attorneys' fees and other litigation costs reasonably incurred.

130.    Furthermore, unless restrained and enjoined, Defendant will continue to commit such acts.  Plaintiff Diep's remedy at law is not adequate to compensate it for these inflicted and threatened injuries, entitling Plaintiff to remedies including injunctive relief as provided Maryland Code § 10-410. Plaintiff Diep therefore requests that Defendant be enjoined and restrained from distributing such "phishing" or "spoofing" applications in the App Store, and that this Court retain jurisdiction over this matter to monitor compliance with such an order.

WHEREFORE, Plaintiffs pray for the relief set forth below.

**COUNT VIII**
**Violation(s) of the Maryland Personal Information Protection Act**
**Md. Ann. Code, Commercial Law, § 14-3501, *et seq*.**
**(on behalf of Plaintiff Diep and the Maryland Class)**

131.    Plaintiffs repeat and incorporate herein by reference the allegations in the preceding paragraphs of this Complaint, as if set forth fully herein.

132.    Plaintiff Diep resides in Maryland.

133.    Defendant is a business that owns Personal Information of Plaintiff Diep and the Maryland Subclass Members.

134.    The Toast Plus application is a "phishing" or "spoofing" application, one whose only purpose is to intercept financial information that was intended for another, legitimate recipient.

135.    Defendant came to know of this illegitimate nature of the Toast Plus application some time before Plaintiff Diep became aware of her loss of private data.

136.    This security breach included information that is considered Personal Information under the "Maryland Personal Information Protection Act," Maryland Code, Commercial Law, §

14-3501, et seq. ("PIPA"), in that it included "Financial Information" and or "Personal Information," as defined therein and or by reference.

137.    On information and belief, Plaintiff Diep's and Maryland Subclass Members' Personal Information was taken as a result of the distribution of the Toast Plus application.

138.    The servers and network connections in which the data breach occurred was controlled by Defendant.

139.    Defendant failed to "implement and maintain reasonable security procedures and practices that are appropriate to the nature of the personal information owned or licensed and the nature and size of the business and its operations," which was the direct cause of the data breach.

140.    This failure constitutes a violation of PIPA.

141.    Defendant further failed to properly notify Plaintiff Diep and the Maryland Subclass Members of the unauthorized access of their Personal Information, as required by PIPA, in that no notice was given whatsoever.

142.    That notification failure constitutes a violation of PIPA.

143.    Each of the Defendant's failures under PIPA constitute violations of Maryland Code Annotated, Commercial Law, Title 13, the "Consumer Protection Act" ("MCPA").

144.    Plaintiff Diep therefore claims statutory damages for herself and the Maryland Class Members, pursuant to Maryland Code Annotated, Commercial Law, Title 13, for each and every violation of the same.

145.    Plaintiff Diep further claims attorney's fees and costs of suit, as authorized under the MCPA.

WHEREFORE, Plaintiffs pray for the relief set forth below.

**COUNT IX**
**Violation(s) of the Maryland Consumer Protection Act**
**Md. Ann. Code, Commercial Law, § 13-101, *et seq.***
***(on behalf of Plaintiff Diep and the Maryland Subclass)***

146.    Plaintiffs repeat and incorporate herein by reference the allegations in the preceding paragraphs of this Complaint, as if set forth fully herein.

//

23

147.    Defendant intentionally, through its published statements, both through statements made by itself and or through its agents, representatives, and officers, and or visual depictions, made representations and or omitted information about the App Store in general and thereby the Toast Plus application in specificity, each constituting a consumer good or service, which had or could have had the capacity, tendency, or effect of deceiving or misleading consumers.

148.    Those representations and or omissions included written statements, and or visual depictions, as to the characteristic(s), quantit(ies), and or the particular standard(s), grade(s), and or safety of the App Store in general and thereby the Toast Plus application in specificity, and or each component thereof.

149.    In addition to these statements, Defendant failed to state material fact(s), which had the tendency to deceive Plaintiff Diep, as to the characteristic(s), quantit(ies), and or the particular standard(s), grade(s),  and or safety of the the App Store in general and thereby the Toast Plus application in specificity, and or each component thereof

150.    Those statements, visual depictions, and failure(s) to state material fact(s) caused Plaintiff Diep and the Maryland Subclass to suffer pecuniary harm.

151.    Those statements, visual depictions, and failure(s) to state material fact(s) constitute intentional and or willful violation(s) of Maryland Code Annotated, Commercial Law, Title 13, the "Consumer Protection Act."

152.    Plaintiff Diep claims statutory and actual damages pursuant to Maryland Code Annotated, Commercial Law, Title 13, for these violations of the same.

153.    Plaintiff Diep further claims attorneys' fees for Defendant's violations of the same.

WHEREFORE, Plaintiffs pray for the relief set forth below.

### COUNT X
### Negligence
### *(on behalf of Plaintiffs and the Class)*

154.    Plaintiffs repeat and incorporate herein by reference the allegations in the preceding paragraphs of this Complaint, as if set forth fully herein.

155. As a provider of goods and services through a near-monopolistic application market, Defendant has duties to consumers, *inter alia*, to take reasonable precautions to ensure that the goods it provides are reasonably safe and secure.

156. Defendant breached those duties through act and omission, including, but not limited to, by failing to properly vet the Toast Plus application before providing it to the public, by failing to warn the public of the actual risks of applications in the App Store, by failing to remove Toast Plus from the App Store after learning of its dangerous nature, and or by failing to warn or notify each Toast Plus user of the danger after learning of the danger itself.

157. Those acts and omissions caused direct, proximate, and foreseeable harm to Plaintiffs and the Class Members, in that, without limitation, each lost present-day value of cryptocurrency, each loss of investment value of the same, and, as applicable, each incurred loss of time in investigating the conduct.

158. The negligent conduct further constituted violations of the right of privacy.

159. Plaintiffs therefore demand actual damages for negligence for themselves and each Class Member.

WHEREFORE, Plaintiffs pray for the relief set forth below.

### PRAYER FOR RELIEF

WHEREFORE, having stated their Complaint, Plaintiffs respectfully pray for judgment against Defendant as follows:

A. For an Order certifying the Class and Subclass;

B. For an Order declaring Defendant's conduct unlawful;

C. For preliminary, permanent and mandatory injunctive relief prohibiting Defendant, its officers, agents, and all those acting in concert with it, from committing in the future those violations of law herein alleged;

D. For statutory, actual, or compensatory damages to Plaintiffs and to the Classes to the maximum extent permitted by law and as identified under the quantum theories herein;

E. For pre- and post- judgment interest according to proof;

F.  For costs of suit, including reasonable attorneys' fees, costs, and expenses under applicable provisions of law;

G.  For all other relief this Court deems just, equitable, and proper.

Dated: March 15, 2022          CONN LAW, PC

                              By:  */s/ Elliot Conn*
                                   Elliot Conn

                                   *Attorneys for Plaintiffs and the Proposed Classes*

FIRST AMENDED CLASS ACTION COMPLAINT

**JURY DEMAND**

Plaintiffs hereby request a jury trial for all issues triable by jury including, but not limited to, those issues and claims set forth in any amended complaint or consolidated action.

Dated: March 15, 2022                          CONN LAW, PC


By:    */s/ Elliot Conn*
       Elliot Conn

       *Attorneys for Plaintiffs and the Proposed Classes*

FIRST AMENDED CLASS ACTION COMPLAINT