1   ISABELLE L. ORD (Bar No. 198224)
    isabelle.ord@us.dlapiper.com
2   ALEXANDER E. WOLF (Bar No. 299775)
    alexander.wolf@us.dlapiper.com
3   **DLA PIPER LLP (US)**
4   555 Mission Street, Suite 2400
    San Francisco, CA 94105-2933
5   Tel: 415.836.2500
    Fax: 415.836.2501
6

7   MICHAEL P. O'DAY (*admitted pro hac vice*)
    michael.oday@us.dlapiper.com
8   ELLEN E. DEW (*admitted pro hac vice*)
    ellen.dew@us.dlapiper.com
9   A. NEILL THUPARI (*admitted pro hac vice*)
    neill.thupari@us.dlapiper.com
10  EMILY M. STEINER (*admitted pro hac vice*)
    emily.m.steiner@us.dlapiper.com
11  **DLA PIPER LLP (US)**
12  6225 Smith Ave
    Baltimore, MD 21209
13  Tel: 410.580.3000
    Fax: 410.580.3001
14

15  Attorneys for Defendant
    APPLE INC.

16

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

| | |
|---|---|
| HADONA DIEP and RYUMEI NAGAO, | CASE NO. 4:21-CV-10063-PJH |
| Plaintiffs, | **DEFENDANT APPLE INC.'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT** |
| v. | |
| APPLE INC., | |
| Defendant. | Date:   August 4, 2022 |
| | Time:   1:30 p.m. |
| | Crtrm:  3 |
| | Judge:  Hon. Phyllis J. Hamilton |
| | Complaint filed: March 15, 2022 |

1

## <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION...................................................................................................1

II.     ARGUMENT .......................................................................................................2

        A.      Section 230 of the CDA Bars Plaintiffs' Claims....................................2

        B.      Apple's Terms Are Enforceable..............................................................3

        C.      Plaintiff Nagao Sued the Wrong Party. ..................................................4

        D.      Plaintiffs Fail to Plead Violations of the CFAA. ...................................5

        E.      Plaintiffs Fail to Plead Violations of the Federal or Maryland Wiretap Acts. .......6

                1.      Plaintiffs' Federal Wiretap Act Claim Fails................................6

                2.      Plaintiff Diep's Maryland Wiretap Act Claim Fails. ..................7

        F.      The California UCL and CLRA Claims Fail. ..........................................8

                1.      Plaintiffs' Claims Under the CLRA and UCL Fraudulent Prong Fail. ......8

                        a.      Plaintiffs fail to identify a fraudulent misrepresentation...............8

                        b.      Plaintiffs fail to identify an actionable omission..........................9

                2.      Plaintiffs Lack Standing Under the CLRA Because Apple Did Not Sell or Lease the App to Them..................................................9

                3.      Plaintiffs' UCL Claims Based on Unlawful and Unfair Conduct Fail.....10

                4.      Injunctive Relief Is Not Warranted. .........................................11

        G.      Plaintiff Diep Fails to State a Plausible MCPA Claim.........................12

        H.      The CCPA Claim Fails..........................................................................13

        I.      Apple Did Not Violate the Maryland PIPA. .........................................14

        J.      Plaintiffs' Negligence Claim Fails. ......................................................15

III.    CONCLUSION ..................................................................................................15

1

## <u>TABLE OF AUTHORITIES</u>

2

CASES

3

*Ahern v. Apple Inc.*,
    411 F. Supp. 3d 541 (N.D. Cal. 2019) .................................................................8, 9

4

5

*Barnhart v. Points Dev. US Ltd.*,
    No. 2:16-cv-02516-CAS(EX), 2016 WL 3041036 (C.D. Cal. May 25, 2016) ...........................5

6

7

*Barrett v. Apple Inc.*,
    5:20-cv-04812-EJD, 2022 WL 2119131 (N.D. Cal. June 13, 2022)..........................................4

8

*Barrett v. Apple Inc.*,
    523 F. Supp. 3d 1132 (N.D. Cal. 2021) ...............................................................2, 4

9

10

*Bass v. Facebook, Inc.*,
    394 F. Supp. 3d 1024 (N.D. Cal. 2019) ...................................................................15

11

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*,
    20 Cal. 4th 163 (1999)..........................................................................................10

12

13

*Coffee v. Google, LLC*,
    No. 20-CV-03901, 2022 WL 94986 (N.D. Cal. Jan. 10, 2022) .................................10

14

15

*Currie v. Wells Fargo Bank, N.A.*,
    950 F. Supp. 2d 788 (D. Md. 2013) ...............................................................................12

16

*Davidson v. Apple Inc.*,
    No. 16-CV-4942-LHK, 2017 WL 3149305 (N.D. Cal. Jul. 25, 2017) ........................8

17

18

*Davidson v. Kimberly-Clark Corp.*,
    889 F.3d 956 (9th Cir. 2018)..................................................................................12

19

*Diaz v. Intuit, Inc.*,
    5:15-CV-01778-EJD, 2018 WL 2215790 (N.D. Cal. May 15, 2018)........................15

20

21

*Distinct Media Ltd. v. Doe Defendants 1-50*,
    No. 15-cv-03312, 2015 WL 13389609 (N.D. Cal. Sept. 29, 2015) ............................5

22

23

*Gardiner v. Walmart Inc.*,
    No. 20-cv-04618-JSW, 2021 WL 2520103 (N.D. Cal. Mar. 5, 2021)..................2, 15

24

*Girard v. Toyota Motor Sales, U.S.A., Inc.*,
    316 F. App'x 561 (9th Cir. 2008)..............................................................................8

25

26

*Gravquick A/S v. Trimble Navigation Int'l Ltd.*,
    323 F.3d 1219 (9th Cir. 2003)................................................................................13

27

28

*Gudgel v. Clorox Co.*,
    514 F. Supp. 3d 1177 (N.D. Cal. 2021) ........................................................................8

*Hauck v. Advanced Micro Devices, Inc.*,
    816 F. App'x 39 (9th Cir. 2020)....................................................................................9

*In re Carrier IQ, Inc.*,
    78 F. Supp. 3d 1051 (N.D. Cal. 2015) ...........................................................................7

*In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*,
    440 F. Supp. 3d 447 (D. Md. 2020) .............................................................................14

*Ingels v. Westwood One Broad. Servs., Inc.*,
    129 Cal. App. 4th 1050 (2005)....................................................................................10

*Johnson v. Baltimore Police Dep't*,
    CV SAG-18-2375, 2021 WL 1610152 (D. Md. Apr. 23, 2021) ................................14

*Korea Supply Co. v. Lockheed Martin Corp.*,
    29 Cal. 4th 1134 (2003)..............................................................................................11

*Lloyd v. General Motors Corp.*,
    397 Md. 108, 916 A.2d 257 (Md. 2007) .....................................................................12

*Mandani v. Volkswagen Grp. of Am., Inc.*,
    No. 17-cv-07287-HSG, 2019 WL 652867 (N.D. Cal. Feb. 15, 2019) .........................9

*Maryland v. Wash. Metro. Area Transit Auth.*,
    No. 14-cv-3397- TDC, 2015 WL 4389885 (D. Md. July 13, 2015) ...........................7

*Mehta v. Robinhood Financial*,
    No. 21-cv-01013, 2021 WL 6882377 (N.D. Cal. May 6, 2021) .........................14, 15

*Mullins v. Premier Nutrition Corp.*,
    178 F. Supp. 3d 867 (N.D. Cal. 2016) ..........................................................................9

*Multiven, Inc. v. Cisco Sys., Inc.*,
    725 F. Supp. 2d 887 (N.D. Cal. 2010) ..........................................................................6

*Munns v. Kerry*,
    782 F.3d 402 (9th Cir. 2015)......................................................................................12

*Myers v. United States*,
    673 F. App'x 749 (9th Cir. 2016)...........................................................................2, 11

*Nowak v. Xapo, Inc.*,
    No. 5:20-cv-03643-BLF, 2020 WL 6822888 (N.D. Cal. Nov. 20, 2020)....................6

*Palmer v. Apple Inc.*,
    No. 5:15-cv-05808-RMW, 2016 WL 1535087 (N.D. Cal. Apr. 15, 2016)..................8

*Price v. Apple Inc.*,
    21-cv-02846-HSG, 2022 WL 1032472 (N.D. Cal. Apr. 6, 2022) ................................................4

*R.H. v. Los Gatos Union Sch. Dist.*,
    33 F. Supp. 3d 1138 (N.D. Cal. 2014) ...............................................................................15

*San Miguel v. HP Inc.*,
    317 F. Supp. 3d 1075 (N.D. Cal. 2018) ................................................................................6

*Satchell v. Sonic Notify, Inc.*,
    234 F. Supp. 3d 996 (N.D. Cal. 2017) ..................................................................................6

*Sikhs for Justice "SFJ", Inc. v. Facebook, Inc.*,
    144 F. Supp. 3d 1088 (N.D. Cal. 2015) ................................................................................3

*Smith v. LG Electronics U.S.A., Inc.*,
    C-13-4361, 2014 WL 989742 (N.D. Cal. Mar. 11, 2014) (Hamilton, J.) ................................10

*Sonner v. Premier Nutrition Corp.*,
    971 F.3d 834 (9th Cir. 2020) ............................................................................................11

*Strayer v. Idaho State Patrol*,
    No. 21-35247, 2022 WL 685422 (9th Cir. Mar. 8, 2022) ....................................................12

*Summers v. Earth Island Inst.*,
    555 U.S. 488 (2009) ........................................................................................................12

*Sunbelt Rentals, Inc. v. Victor*,
    43 F. Supp. 3d 1026 (N.D. Cal. 2014) .................................................................................7

*Troester v. Starbucks Corp.*,
    5 Cal. 5th 829 (Cal. 2018), *as modified on denial of reh'g* (Aug. 29, 2018) ...........................13

*Van Buren v. Walmart, Inc.*,
    Civ. Act. No. DKC 19-0911, 2020 WL 1064823 (D. Md. Mar. 5, 2020).................................13

*Williams v. Gerber Prods. Co.*,
    552 F.3d 934 (9th Cir. 2008).............................................................................................9

**STATUTES**

47 U.S.C. § 230 .........................................................................................................1, 2, 3, 5, 7

47 U.S.C. § 230(c).................................................................................................................3

47 U.S.C. § 230(c)(1).............................................................................................................3

47 U.S.C. § 230(e)(1).............................................................................................................3

47 U.S.C. § 230(e)(4).............................................................................................................3

iv

1

Cal. Civ. Code § 1668 ............................................................................................3, 4

2

Cal. Civ. Code § 1770 ...............................................................................................10

3

Cal. Civ. Code § 1798.140(g) ...................................................................................13

4

Cal. Civ. Code § 3513 .................................................................................................3

5

Md. Code Ann., Comm. Law Art. § 14-3504(c)(1) ..................................................14

6

Md. Code Ann., Comm. Law Art. § 14-3508 ...........................................................14

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## I.      INTRODUCTION

Plaintiffs' FAC was a misguided attempt to hold Apple responsible for allegedly criminal actions carried out by a third party through that party's (not Apple's) "Toast Plus" app.  Recognizing that such a theory would contravene Section 230 of the Communications Decency Act ("CDA") by treating Apple as the publisher of third-party apps on the App Store, the Opposition disavows the original theory and pivots to two new theories.

Under one theory, Apple allegedly played an active role in violating state and federal anti-hacking, wiretap, and privacy statutes by "intercepting" Plaintiffs' cryptocurrency.  However, Plaintiffs concede that "hackers" (not Apple) used the Toast Plus app to obtain "cryptocurrency account information" from Plaintiffs and "rout[ed] the same to the hackers' personal accounts." Opp. 13.  There is not a single, well-pleaded allegation that Apple took part in the alleged interception.  And holding Plaintiffs to their representation that they do not seek to assert any claim barred by CDA Section 230, they may not simply imply that Apple should have done more to stop the "hackers" and prevent the alleged interception.

Under the second theory, Apple allegedly provided false assurances that the App Store was safe.  But Plaintiffs fail to supply well-pleaded facts that Apple's statements about the App Store were false, because the FAC is narrowly focused on the experiences of just two Plaintiffs with just one app.  *Iqbal* and *Twombly* require much more to support the breathtaking leap of logic that, because these two Plaintiffs allegedly had a bad experience with a single app, Apple misrepresented that the App Store is safe.

Plaintiffs' failure to state any plausible claim requires dismissal.  But there is more.  As set forth in Apple's Motion, the Terms, to which Plaintiffs agreed, contain limitations of liability and disclaimers that bar the claims.  Additionally, Plaintiff Nagao, as a resident of Japan, failed to sue the proper party under the Japan Terms.  The Opposition neither cures nor explains any of the numerous fatal defects in the FAC, which should be dismissed with prejudice.

///

///

///

1    **II.     ARGUMENT[1]**

2        **A.     SECTION 230 OF THE CDA BARS PLAINTIFFS' CLAIMS.**

3        Plaintiffs do not dispute the CDA prohibits treating *Apple* "as the publisher" of the Toast Plus

4    app and bars any claim against Apple that has its basis in allowing the Toast Plus app on the App

5    Store. *See* Mot. 5-8; 47 U.S.C. § 230. Although Plaintiffs state that they "do not concede that Apple

6    was not responsible in any part for the creation of the Toast Plus app," Opp. 6, their burden is to

7    affirmatively allege the facts that support their claims. *See Gardiner v. Walmart Inc.*, No. 20-cv-

8    04618-JSW, 2021 WL 2520103, at *3 (N.D. Cal. Mar. 5, 2021) ("Although the Court will draw

9    reasonable inferences in Plaintiff's favor at this stage, it cannot read missing allegations into the

10   complaint."). Here, Plaintiffs allege that it was others (not Apple) who developed the Toast Plus app.

11   FAC ¶ 23. For this reason, the FAC pleads claims barred by the CDA.[2] The Opposition, however,

12   attempts to steer clear of the CDA by retroactively limiting Plaintiffs' claims.

13       First, as to the UCL, CLRA, MCPA, and negligence claims, Plaintiffs seek to proceed "*solely*

14   on Apple's own misrepresentations" and "marketing statements" that the App Store is a "safe and

15   trusted place to discover and download apps." Opp. 4-5. Significantly, Plaintiffs disclaim

16   "complain[ing] of" Apple's "application review process" or of "the fact that Toast Plus was created

17   by a third-party [*sic*]." Opp. 5. As set forth below, Plaintiffs fail to identify any misrepresentation

18   on which to base their UCL, CLRA, MCPA, or negligence claims. *See* Sections F, G, J.

19       Second, as to the CFAA, federal and state wiretapping, CCPA, and Maryland PIPA claims,

20   Plaintiffs clarify that they seek to proceed against Apple *only* on the basis of "*its* violations of the

21   federal" statutes and "*its* violations of the state" statutes. Opp. 6-7 (emphasis added). While true

---

[1] Plaintiffs erroneously rely on the outdated *Conley* "no set of facts" pleading standard that was overruled 15 years ago by the more stringent *Iqbal*/*Twombly* "plausibility" standard. *See* Opp. 3.

[2] Even now, Plaintiffs litter the Opposition with allegations that run headfirst into the CDA. *E.g.*, Opp. 2 (Apple "allowed the application developer . . . to use a name and logo of a legitimate cryptocurrency wallet provider."); *id.* 15 (similar); *id.* 2 (Apple "allow[ed]" Toast Plus "to be distributed on the App Store"); *id.* 14 ("Apple failed to properly vet the Toast Plus application"). In its Motion, Apple demonstrated why these allegations fail under the CDA. Mot. 5-8. If Plaintiffs are, in fact, limiting their claims, these allegations are forfeited. Otherwise, Plaintiffs' failure to respond to Apple's arguments is a waiver, and any claim based on these allegations should be dismissed. *See Myers v. United States*, 673 F. App'x 749, 752 (9th Cir. 2016).

CASE NO. 4:21-CV-10063-PJH                    APPLE'S REPLY ISO MOTION TO DISMISS FAC

1   that the CDA does not "impair the enforcement of . . . any [] Federal criminal statute" or "limit the

2   application of the Electronic Communications Privacy Act of 1986 . . . or any similar State law," 47

3   U.S.C. § 230(e)(1) and (4), these provisions do not create substantive rights.  Plaintiffs must still

4   plead and prove that Apple (not others) engaged in the prohibited conduct under "Federal criminal

5   statute[s]" or ECPA and "similar State law."  What Section 230(c) prevents—without impairing or

6   limiting these other laws—is treating Apple as the publisher of the Toast Plus app in evaluating

7   liability under such laws.  *See* Mot. 7.  As set forth below, the FAC lacks well-pleaded allegations

8   that Apple, itself, engaged in conduct that violated the CFAA, federal or state wiretapping statutes,

9   CCPA, or Maryland PIPA.  *See* Sections D, E, H, I.  If, contrary to the representations in Section

10   V.A of the Opposition, Plaintiffs still seek to hold Apple liable merely because the Toast Plus app

11   was available on the App Store and Apple did not intervene to protect Plaintiffs, the claims must be

12   dismissed under Section 230 of the CDA.  *See Sikhs for Justice "SFJ", Inc. v. Facebook, Inc.*, 144

13   F. Supp. 3d 1088, 1094 (N.D. Cal. 2015) ("To determine whether a plaintiff's theory of liability

14   treats a defendant as a publisher, what matters is not the name of the cause of action. Instead, what

15   matters is whether the cause of action inherently requires the court to treat the defendant as the

16   publisher or speaker of content provided by another.  Consequently, courts must ask whether the

17   duty that the plaintiff alleges the defendant violated derives from the defendant's status or conduct

18   as a publisher or speaker.  If it does, section 230(c)(1) precludes liability." (internal quotations and

19   citations omitted)).

20   **B.     APPLE'S TERMS ARE ENFORCEABLE.**

21   Plaintiffs do not dispute that their use of the App Store is subject to the Terms and expressly

22   acknowledge that the Terms contain a limitation of liability provision.  *See* Mot. 8-10; FAC ¶ 35.

23   They argue that the limitation of liability provision is unenforceable under Sections 1668 and 3513

24   of the California Civil Code.  Opp. 7-8.  These provisions, however, only govern the enforceability

25   of contracts that "contravene" a "law established for a public reason," Cal. Civ. Code § 3513, or that

26   "exempt anyone from responsibility ***for his own***" fraud, violations of law, or certain other conduct,

27   Cal. Civ. Code § 1668 (emphasis added).  Neither applies here.

28   ///

Apple does not seek to *waive* the application of or contravene any law, nor does it request any exemption for responsibility for its *own* tortious conduct.  Rather, the provision limits Apple's liability for "damages or losses[] arising out of or related to [Plaintiffs'] use of" Toast Plus, *a third-party application*.  *See* RJN Ex. A (ECF No. 43-3), § G(f).  Where, as here, a plaintiff seeks to hold Apple liable for harms caused by third-party tortfeasors, the limitation of liability clause "does not attempt to avoid California unfair competition statutes or otherwise contract around the law." *Barrett v. Apple Inc.*, 523 F. Supp. 3d 1132, 1154-55 (N.D. Cal. 2021) ("*Barrett I*").  In this situation "the disclaimer does not violate California Civil Code § 1668" and is enforceable to bar claims against Apple for harms caused by third-party tortfeasors. *Barrett v. Apple Inc.*, 5:20-cv-04812-EJD, 2022 WL 2119131, at *12-14 (N.D. Cal. June 13, 2022) ("*Barrett II*") (enforcing Apple's limitation of liability provision and "dismiss[ing] with prejudice the portions of the CLRA and UCL unfair practices claims concerning unconscionability of Apple's disclaimer as to third-party liability").

*Barrett* is directly on point. Plaintiffs attempt to get around *Barrett*'s reasoning by arguing that that case, unlike this one, involved a claim of unconscionability.  Opp. 8 (citing *Barrett I,* 523 F. Supp. 3d at 1153-55).[3]  The argument is a red herring.  In *Barrett*, the court rejected plaintiffs' argument that the Terms' limitation of liability provision was unenforceable under the same Civil Code provision, Section 1668.  Here, as in *Barrett*, the provision should be enforced, and Apple should not be liable for the acts of the Toast Plus developers. *See Barrett II*, 2022 WL 2119131, at *14; *see also Price v. Apple Inc.*, 21-cv-02846-HSG, 2022 WL 1032472, at *3 (N.D. Cal. Apr. 6, 2022); *Barrett I*, 523 F. Supp. 3d at 1140-41, 1158, 1163.  Apple's representations regarding the App Store do not equate to liability for a user's interactions with third parties.  Simply put, Plaintiffs have offered no basis to avoid Apple's Terms which are a complete bar to Plaintiffs' claims.

## C.      PLAINTIFF NAGAO SUED THE WRONG PARTY.

The Japan Terms govern Plaintiff Nagao's use of the App Store, and explain that, for Japanese users, "Apple" refers to the Japanese affiliate, "iTunes K.K."  *See* Japan Terms, RJN Ex.

---

[3] Plaintiffs also omit that, here, as in *Barrett*, the FAC alleges that Apple's Terms are a "product of adhesion" and therefore do not apply, which raises unconscionability.  FAC ¶¶ 35-36.

B (ECF No. 43-4), § A ("This Agreement governs your use of Apple's services ("Services"), through which you can buy, get, license, rent or subscribe to content, Apps . . . , and other in-app services."); RJN Ex. B (ECF No. 43-4), § L (emphasis added).  Thus, for Plaintiff Nagao, any dispute or claim about his use of the App Store must be brought against iTunes, K.K.  *Accord Barnhart v. Points Dev. US Ltd.*, No. 2:16-cv-02516-CAS(EX), 2016 WL 3041036, at *3-4 (C.D. Cal. May 25, 2016) (dismissing claims against improperly named affiliate of real party in interest).  Plaintiff Nagao sued Apple, not iTunes K.K., and his claims should be dismissed for his failure to sue the proper party.

Plaintiffs argue that the Japan Terms do not apply because Nagao has not alleged breach of contract.  Opp. 9.  But Plaintiffs' theory of liability is irrelevant and the Opposition contains no authority whatsoever for the argument that the characterization of the claims can avoid the application of the Japan Terms.  The Opposition also offers no support for the assertion that Apple "does not get to decide who Plaintiffs sue," and fails to address any of the controlling cases cited in the Motion.  Opp. 8.

### D.   PLAINTIFFS FAIL TO PLEAD VIOLATIONS OF THE CFAA.

In support of their CFAA claim, Plaintiffs argue that "the Toast Plus app is designed to exceed the authorization that users agree to because it is a 'phishing' and 'spoofing' app" and therefore "Apple knew of the fraudulent purpose of Toast Plus prior to allowing it to be distributed on the App Store because of its 'rigorous vetting process.'" Opp. 9.[4]  As an initial matter, Plaintiffs may not pursue a claim that Apple "allow[ed]" an app to be distributed, as such a claim is barred under Section 230 of the CDA—and Plaintiffs either expressly forfeited this claim in their Opposition or waived it by failing to address or refute Apple's arguments.  *See* Section II.A.

Regardless, the allegations do not state a claim that Apple (as opposed to the developers of the Toast App) violated the CFAA.  Plaintiffs allege no facts to plausibly show that Apple had actual knowledge, let alone intent to defraud (nor can they).  A "plaintiff cannot prove 'intent to defraud'

---

[4] Plaintiffs also ignore their failure to identify which subsections of the CFAA Apple allegedly violated.  Apple should not have to guess which subsections of the CFAA are at issue in this case, and that alone is a basis for dismissal.  *See* Mot. 11, n.11; *Distinct Media Ltd. v. Doe Defendants 1-50*, No. 15-cv-03312, 2015 WL 13389609, at *4 (N.D. Cal. Sept. 29, 2015).

by merely showing that an unauthorized access has taken place." *Multiven, Inc. v. Cisco Sys., Inc.*, 725 F. Supp. 2d 887, 892 (N.D. Cal. 2010).   Plaintiffs' unreasonable inference regarding the existence of an app review process is insufficient under the CFAA to establish actual knowledge of the hacking.   *Nowak v. Xapo, Inc.*, No. 5:20-cv-03643-BLF, 2020 WL 6822888, at *3 (N.D. Cal. Nov. 20, 2020) ("[T]he Complaint alleges that Defendant had actual or constructive knowledge of its inadequate security systems, which enabled the hacking to occur.  Such conduct appears beyond the scope of the CFAA . . . .").

Plaintiffs admit that "hackers" (not Apple) used the Toast Plus app to obtain "cryptocurrency account information" from Plaintiffs and "rout[ed] the same to the hackers' personal accounts." Opp. 13; FAC ¶¶ 24-34.  Furthermore, Plaintiffs do not contest that they voluntarily downloaded the app or provided their personal information to Toast Plus, but instead allege that the Toast Plus app (not Apple) "exceed[ed] its authorization of access" through theft of Plaintiffs' cryptocurrency. Opp. 10; Mot. 12.  Plaintiffs rely on *San Miguel v. HP Inc.*, but that case directly rejects Plaintiffs' argument.  317 F. Supp. 3d 1075, 1085 (N.D. Cal. 2018) ("Subsections (B) and (C) [of the CFAA] are inapplicable in light of Plaintiffs' admission in the Complaint that HP had 'authorized access' to Plaintiffs' printers.").   Because Plaintiffs voluntarily downloaded the Toast Plus app, Plaintiffs cannot plausibly allege actionable access under the CFAA.

**E.      PLAINTIFFS FAIL TO PLEAD VIOLATIONS OF THE FEDERAL OR MARYLAND WIRETAP ACTS.**

**1.      Plaintiffs' Federal Wiretap Act Claim Fails.**

The Opposition fails to demonstrate that Apple (1) intercepted, disclosed, or used information from a communication knowing that it was unlawfully intercepted, and (2) acted with intent.  The term "intercept" means to "*actually* [acquire] the contents of a communication." *Satchell v. Sonic Notify, Inc.*, 234 F. Supp. 3d 996, 1006 (N.D. Cal. 2017) (emphasis and alteration in original) (quotation omitted).  The FAC contains no allegations that Apple ever actually obtained Plaintiffs' account information or cryptocurrency tokens.  Rather, Plaintiffs admit that "hackers" "obtain[ed]" Plaintiffs' "cryptocurrency account information" and routed that information "to the hackers' personal accounts."  Opp. 13.  Wholly absent is any allegation that ***Apple participated in the***

1  *interception*.  *See* FAC ¶¶ 24-34.  Plaintiffs "transferred cryptocurrency to Toast Plus," and concede

2  that hackers, not Apple, stole Plaintiffs' cryptocurrency and "rout[ed] the same to the hackers'

3  personal accounts."  Opp. 13; FAC ¶¶ 29; 31-32, 34.

4         In the Opposition, Plaintiffs improperly attempt to recast their deficient allegations in the

5  FAC to show that Apple intercepted and disclosed Plaintiffs' "seed phrases," but these assertions

6  find no support in any well-pleaded allegations in the FAC.  *See* Opp. 11 (claiming that Apple

7  intercepted and disclosed Plaintiffs' "seed phrases" because Apple vetted and made the Toast Plus

8  app available in the App Store).  Plaintiffs cite no legal authority and offer nothing more than

9  conclusory arguments which, for the first time, mischaracterize Toast Plus as an "Apple app,"

10  although the FAC acknowledges that Toast Plus was a third-party app.  *See* Opp.11; FAC ¶ 23; *see*

11  *e.g.*, *In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1088 (N.D. Cal. 2015) ("Plaintiffs have failed to

12  cite any case that would support the imposition of Wiretap Act liability on a party who merely

13  provided a means through which a third party subsequently intercepts communications.  To the

14  contrary, authority has consistently rejected such a theory of liability.").

15         Moreover, the FAC pleads no facts showing that Apple acted with requisite intent and the

16  Opposition contains no support for Plaintiffs' argument that intent can be inferred through Apple's

17  "vetting process."  As Plaintiffs have conceded, any claim that Apple "intentionally allow[ed] the

18  Toast Plus application [to be] distributed through the App Store," FAC ¶ 61, is barred by the CDA.

19  Allowing the app on the App Store does not equate to intentional interception of any of Plaintiffs'

20  communications.  *Sunbelt Rentals, Inc. v. Victor*, 43 F. Supp. 3d 1026, 1030-31 (N.D. Cal. 2014).

21              **2.     Plaintiff Diep's Maryland Wiretap Act Claim Fails.**

22         The Maryland Wiretap Act mirrors the Federal Wiretap Act and therefore Plaintiff Diep's

23  claims under the Maryland Act (Counts VI and VII) fail for the same reasons.  To survive a motion

24  to dismiss, Plaintiff Diep was required to plead facts that: (i) Apple intercepted or disclosed any

25  communication or information from Diep; and (ii) Apple had the requisite intent to act "willfully."

26  *Maryland v. Wash. Metro. Area Transit Auth.*, No. 14-cv-3397- TDC, 2015 WL 4389885, at *7 (D.

27  Md. July 13, 2015).  She has not met her burden, and there are no facts alleged in the FAC to support

28  a plausible claim for violation of the Maryland Wiretap Act.

1    **F.      THE CALIFORNIA UCL AND CLRA CLAIMS FAIL.**

2            **1.      Plaintiffs' Claims Under the CLRA and UCL Fraudulent Prong Fail.**

3            Plaintiffs fail to satisfy the heightened pleading standard for their CLRA and UCL claims

4    sounding in fraud because Plaintiffs fail to identify a false statement by Apple, including "what is

5    false or misleading about [the] statement, and why it is false." *Ahern v. Apple Inc.*, 411 F. Supp. 3d

6    541, 559 (N.D. Cal. 2019) (alteration in original).

7                      **a.      Plaintiffs fail to identify a fraudulent misrepresentation.**

8            The Opposition argues that Plaintiffs relied on Apple's "express representations that its Apps

9    were safe" in downloading Toast Plus and transferring cryptocurrency to the app, and "Apple cannot

10   avoid liability for its express misrepresentations of safety."   Opp. 13.   But such general

11   representations about the App Store itself cannot support a fraudulent misrepresentation claim based

12   on losses allegedly caused by a single third-party app.   Plaintiffs offer no explanation or supporting

13   authority for their theory that because one app out of "nearly two million" (FAC ¶ 14) allegedly

14   caused harm to Plaintiffs, this means the App Store is unsafe and Apple's statements regarding the

15   App Store are fraudulent misrepresentations.   *See Ahern*, 411 F. Supp. 3d at 559 ("[T]hat some

16   [Apple products] suffered from the [alleged] defect does not demonstrate that Apple made any

17   misrepresentation of fact in stating that the [products] were [rigorously tested] . . . ." (alterations in

18   original)).   Plaintiffs also ignore authority dismissing UCL and CLRA claims where the complaint

19   fails to allege what is false about a statement, and why it is false.   *See id.*; *Davidson v. Apple Inc.*,

20   No. 16-CV-4942-LHK, 2017 WL 3149305, at *11 (N.D. Cal. Jul. 25, 2017); *Palmer v. Apple Inc.*,

21   No. 5:15-cv-05808-RMW, 2016 WL 1535087, at *5 (N.D. Cal. Apr. 15, 2016).

22           Apple's Terms also specifically disclaim liability for losses caused by third-party apps.   The

23   Opposition asserts that this disclaimer is a "hidden contrary statement[]" to Apple's representations

24   regarding the App Store, which "raise[s] a question of fact."   Opp. 13.   The disclaimer was expressly

25   included in the Terms and thus no reasonable consumer could be deceived.   *E.g.*, *Girard v. Toyota*

26   *Motor Sales, U.S.A., Inc.*, 316 F. App'x 561, 563 (9th Cir. 2008) (affirming dismissal of UCL, CLRA

27   and negligent misrepresentation claims where defendants' statements included disclaimers such that

28   no reasonable consumer would be deceived); *Gudgel v. Clorox Co.*, 514 F. Supp. 3d 1177, 1186

(N.D. Cal. 2021) (dismissing UCL and CLRA claims based, in part, on disclaimer language on product label).  The cases cited by Plaintiffs involve deceptive product labeling and packaging, not express disclaimers in terms of use.  *See Mullins v. Premier Nutrition Corp.*, 178 F. Supp. 3d 867, 891, 904 (N.D. Cal. 2016) (denying summary judgment where Joint Juice supplement included disclaimer but "[t]he name alone implies that the whole point to drinking the product is to receive joint health benefits" and the packaging claimed the product was "developed for pro athletes by orthopedic surgeon"); *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 939 (9th Cir. 2008) (finding "fruit juice snacks" "could likely deceive a reasonable consumer" based on the name and packaging depicting fruits).  Plaintiffs' inability to identify a single fraudulent misrepresentation by Apple is dispositive.

### b.    Plaintiffs fail to identify an actionable omission.

Plaintiffs also fail to plead any facts Apple knew and should have disclosed about the third-party Toast Plus app at the time Plaintiffs downloaded it or deposited cryptocurrency into their digital "wallets."  *Ahern*, 411 F. Supp. 3d at 564-66 ("[A] defendant must have known of the defect at the time of sale for a plaintiff to state a claim for fraud by omission" (internal quotations omitted)); *Mandani v. Volkswagen Grp. of Am., Inc.*, No. 17-cv-07287-HSG, 2019 WL 652867, at *7 (N.D. Cal. Feb. 15, 2019) (rejecting conclusory attempts to plead pre-sale knowledge).  While Nagao allegedly notified Apple *after* his cryptocurrency was stolen, that does not establish whether Apple knew or omitted anything from disclosure *before* the loss.  *See* FAC ¶¶ 24-34.  Absent an actionable omission, any UCL or CLRA claim necessarily fails.  *See Hauck v. Advanced Micro Devices, Inc.*, 816 F. App'x 39, 42-43 (9th Cir. 2020) (dismissing omission claim because plaintiffs "do not plausibly allege that AMD knew of the specific vulnerability identified in their second amended complaint until that vulnerability was disclosed to AMD… after [plaintiffs] had made their purchases").

### 2.    Plaintiffs Lack Standing Under the CLRA Because Apple Did Not Sell or Lease the App to Them.

Plaintiffs' initial free download of a digital application from the App Store, even when coupled with subsequent transactions with a third party through that app, are insufficient for standing

because "the free download" does not "qualif[y] as 'the sale or lease of goods or services' under the CLRA." *Coffee v. Google, LLC*, No. 20-CV-03901, 2022 WL 94986, at *9 (N.D. Cal. Jan. 10, 2022). Plaintiffs do not even acknowledge *Coffee*. Instead, the "transaction" identified by Plaintiffs in the Opposition is "Plaintiffs['] ongoing relationships with Apple." Opp. 15. This is not sufficient for standing under the CLRA, which requires "a transaction intended to result or which results in the sale or lease of goods or services to any consumer." *Coffee*, 2022 WL 94986, at *9 (quoting Cal. Civ. Code § 1770). Plaintiffs' argument further ignores that downloading an app from the App Store is separate from Plaintiffs' transaction with a third-party app to upload cryptocurrency into the Toast Plus app. It was this transaction that caused Plaintiffs' alleged harm, not any transaction with Apple.

### 3.    Plaintiffs' UCL Claims Based on Unlawful and Unfair Conduct Fail.

Plaintiffs' arguments that they have sufficiently alleged unfair and unlawful conduct violative of the UCL are not only unavailing, but they completely ignore the applicable law discussed in Apple's Motion. *See* Mot. 19. With respect to the unlawful prong, Plaintiffs do not identify any independent basis to support their unlawful or unfair UCL claims. Instead, Plaintiffs' civil statutory claims as well as their UCL claims all rely upon the same alleged predicate wrongdoing: namely, that Apple failed to discover and then warn consumers that the Toast Plus App was a "spoofing" app. Opp. 15 (citing FAC ¶¶ 48-76, 100-114). Thus, the "unlawful" claim under the UCL is entirely derivative of the other statutory claims discussed above, and fails for the same reason those claims fail. *See Smith v. LG Electronics U.S.A., Inc.*, C-13-4361, 2014 WL 989742, at *11-12 (N.D. Cal. Mar. 11, 2014) (Hamilton, J.) (dismissing UCL and CLRA claims that were derivative of one another and based on the same alleged course of conduct). Indeed, "[a] defendant cannot be liable under § 17200 for committing 'unlawful business practices' without having violated another law," and here Plaintiffs offer no plausible allegations of Apple's violating any other law. *See Ingels v. Westwood One Broad. Servs., Inc.*, 129 Cal. App. 4th 1050, 1060 (2005).

Plaintiffs' reliance on *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, and its "legal tether" test in support of their unfairness UCL claim is misplaced. *See* 20 Cal. 4th 163, 185-87 (1999). Considering whether the UCL's "unfairness" prong had been met, the California Supreme Court relied on cases decided under the Federal Trade Commission Act's "unfairness"

prong analysis, but specifically limited its "unfairness" analysis to "an action by a competitor alleging anticompetitive practices." *Id*. at 187 n.12. Doing so, the court held that "[n]othing we say relates to actions by consumers or by competitors alleging other kinds of violations of the unfair competition law such as 'fraudulent' or 'unlawful' business practices or 'unfair, deceptive, untrue or misleading advertising.'" *Id.* Plaintiffs' argument that the FTC's "legal tether" test is somehow applicable here is incorrect, as explained by the California Supreme Court.

Moreover, contrary to Plaintiffs' conclusory statements that Apple engaged in "business acts, omissions, and practices" that "constitute unfair business practices," Plaintiffs fail to identify ***any*** specific allegations in the FAC that form the factual basis for such conclusory statements. The glaring absence of substantive allegations that would support any claim for violation of the UCL's "unfairness" prong cannot be ignored. Plaintiffs cannot dispute that the application of any of the three recognized tests should result in dismissal as to Plaintiffs' claims for "unfair" conduct. That is, (i) the FAC fails to allege that Apple's conduct offends public policy and is tied to specific constitutional, statutory, or regulatory provisions; (ii) Plaintiffs have not and cannot allege that Apple's conduct is "immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers;" and (iii) the FAC is devoid of any allegations that Plaintiffs' injury is substantial and "not outweighed by any countervailing benefits to consumers or competition." *See* Mot. 19-20.

### 4.   Injunctive Relief Is Not Warranted.[5]

Plaintiffs argue that monetary damages are an inadequate remedy[6] and "prospective

---

[5] Plaintiffs do not even address Apple's argument that they lack standing to pursue restitution because they fail to allege any harm arising from a transaction *with Apple,* waiving their argument on this issue. *See* Mot. 20; *Myers*, 673 F. App'x at 752. Furthermore, Apple has not taken any funds from Plaintiffs, so restitution is not available to Plaintiffs under the UCL. *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1150-51 (2003) (holding plaintiff cannot obtain restitution under the UCL from a party who has not obtained anything from plaintiff).

[6] Plaintiffs argue legal damages are an inadequate remedy even though their prayers for relief specifically request legal damages. *See* FAC ¶¶ 97-98 (seeking monetary damages and restitution under UCL); ¶¶ 113-114 (seeking monetary damages and attorneys' fees under CLRA); ¶¶ 152-53 (seeking statutory and actual damages under MCPA). Claims for restitution under the CLRA and UCL fail as a matter of law when legal remedies are adequate. *See Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020) ("[Plaintiff] must establish that she lacks an adequate remedy at law before securing equitable restitution for past harm under the UCL and CLRA.").

injunctive relief" is necessary "so Plaintiffs (and the general public) can [confidently] download cryptocurrency wallets going forward."  Opp. 17.  But Plaintiffs do not have standing to seek such relief as they have not alleged any "'actual and imminent, not conjectural or hypothetical' threat of future harm."  *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 969 (9th Cir. 2018); *see also Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009) (to confer standing for injunctive relief, the threat of future harm must be "actual and imminent").  As an initial matter, Plaintiffs do not allege a false statement by Apple that must be remedied on a prospective basis which is, itself, dispositive of their claim.  *See* Sections F.1.a-b, *supra*.  Even if they could identify such a statement, the FAC is devoid of any allegation that the Toast Plus app remains on the App Store, or that Plaintiffs are unable to rely on Apple's statements regarding the App Store any longer, and so would not purchase additional apps although they would otherwise like to.  *Davidson*, 889 F.3d at 969.  Because the FAC contains no allegations of any "actual or imminent" future harm to Plaintiffs, they lack standing to pursue prospective injunctive relief.  *Id.*; *see also Strayer v. Idaho State Patrol*, No. 21-35247, 2022 WL 685422, at *2 (9th Cir. Mar. 8, 2022) ("To the extent the plaintiffs seek prospective injunctive relief . . . they fail to allege a sufficient likelihood that they will be wronged again in a similar way to have standing for prospective injunctive relief."); *Munns v. Kerry*, 782 F.3d 402, 411 (9th Cir. 2015) ("Past exposure to harmful or illegal conduct does not necessarily confer standing to seek injunctive relief if the plaintiff does not continue to suffer adverse effects. Nor does speculation or subjective apprehension about future harm support standing." (quotations omitted)).

### G.    PLAINTIFF DIEP FAILS TO STATE A PLAUSIBLE MCPA CLAIM.

For many of the same reasons that Plaintiffs' California consumer protection claims fail, so too does Plaintiff Diep's MCPA claim.  A Maryland consumer bringing a private action under § 13-408 "must adequately allege (1) an unfair or deceptive practice or misrepresentation that is (2) *relied upon*, and (3) causes them actual injury."  *Currie v. Wells Fargo Bank, N.A.*, 950 F. Supp. 2d 788, 796 (D. Md. 2013) (emphasis added) (internal quotations omitted); *Lloyd v. General Motors Corp.*, 397 Md. 108, 143, 916 A.2d 257, 278 (Md. 2007).  Plaintiffs' suggestion that reliance is not required under the MCPA is wrong.

///

The Opposition next asserts that "[e]ven if reliance needed to be pled" (which it plainly does), Plaintiff Diep met this requirement in Paragraphs 146 and 150 of the FAC.  Opp. 18.  Paragraph 146 simply incorporates by reference all prior allegations of the FAC and Paragraph 150 alleges only that Diep and the Maryland Subclass "suffer[ed] pecuniary harm" due to Apple's "statements, visual depictions, and failure(s) to state material fact(s)."  None of these allegations demonstrate reliance and, accordingly, the MCPA claim should be dismissed.  *Van Buren v. Walmart, Inc.*, Civ. Act. No. DKC 19-0911, 2020 WL 1064823, at *6 (D. Md. Mar. 5, 2020) (dismissing MCPA claim where plaintiff pleaded reliance "in purely conclusory terms" and failed to allege that he would have done anything differently but for the alleged misrepresentation).

### H.      THE CCPA CLAIM FAILS.

The CCPA applies only to California residents and—since neither Plaintiff is a resident of California—it is inapplicable.  *See* Cal. Civ. Code § 1798.140(g) (defining "consumer" as "a natural person who is a California resident"); *see also Troester v. Starbucks Corp.*, 5 Cal. 5th 829, 837 (Cal. 2018), *as modified on denial of reh'g* (Aug. 29, 2018) (CCPA is limited to a consumer, who is "defined as 'natural person who is a California resident'").  Plaintiffs assert that the statute "shall be liberally construed to effectuate its purposes," but "liberal construction" cannot overcome the express language of the statute.  *Id.*; *Gravquick A/S v. Trimble Navigation Int'l Ltd.*, 323 F.3d 1219, 1223 (9th Cir. 2003) ("When a law contains geographical limitations on its application . . . courts will not apply it to parties falling outside those limitations, even if the parties stipulate that the law should apply.").[7]

The CCPA imposes a duty to implement and maintain reasonable security procedures and practices appropriate to the nature of the information collected.  Plaintiffs have not alleged a sufficient nexus between the loss of their cryptocurrency and Apple's security procedures and practices to support a CCPA claim.  Instead, they double-down on their flawed logic that because they were allegedly harmed by a single, third-party app on the App Store, it must follow that Apple's

---

[7] While Plaintiffs generally seek to avoid the Terms, in support of their CCPA claim, Plaintiffs seek to *enforce* the Terms.  Opp. 19 ("Here, Apple, via its Terms of Use, has imposed 'the laws of the State of California' on the parties . . . .").  Plaintiffs cannot have it both ways.

1    security procedures are inadequate.  Plaintiffs do not even respond to Apple's arguments on this

2    point.  *See* Mot. 22.

3        Furthermore, their reliance on *Mehta v. Robinhood Financial* is misplaced.  *Mehta* involved

4    data breach allegations—hacking of customer accounts.  No. 21-cv-01013, 2021 WL 6882377, at *1

5    (N.D. Cal. May 6, 2021).  This is not a data breach case.  Here, Plaintiffs voluntarily downloaded

6    the Toast Plus app, uploaded their cryptocurrency tokens into the app, and then the app stole

7    Plaintiffs' cryptocurrency without the knowledge or involvement of Apple.  FAC ¶¶ 25-27, 31-32.

8    *Mehta* is inapplicable, and Plaintiffs' allegations cannot support a claim for violation of the CCPA.

9                    **I.        APPLE DID NOT VIOLATE THE MARYLAND PIPA.**

10        To state a claim under the MCPA for violations of PIPA, a plaintiff must allege that a

11    business failed to either (i) "implement and maintain 'reasonable security practices and procedures'

12    based on the personal information they collect," and/or (ii) "notify, as soon as practicable, the

13    owner . . . of the personal information of the breach of the security of a system."  *In re Marriott Int'l,*

14    *Inc., Customer Data Sec. Breach Litig.*, 440 F. Supp. 3d 447, 486-87 (D. Md. 2020); Md. Code Ann.,

15    Comm. Law Art. § 14-3504(c)(1).[8]  The Opposition highlights the fact that they have not and cannot

16    plausibly plead that Apple violated Maryland PIPA.  Plaintiffs allege that they downloaded the Toast

17    Plus app from the App Store (FAC ¶ 22), uploaded their cryptocurrency into the third-party app

18    (FAC ¶¶ 25, 31), and that the Toast Plus app, *not Apple*, stole their cryptocurrency.  Plaintiffs do not

19    allege that the security of Apple's system was breached, as opposed to the security of the third-party

20    Toast Plus app, and do not allege that Apple had knowledge of the fraudulent nature of the Toast

21    Plus app *before* Plaintiffs downloaded it or *before* Toast Plus stole Plaintiffs' cryptocurrency.  This

22    is not sufficient to state a claim.

23    ///

24

---

25    [8] Plaintiffs' assertion that Apple erroneously relied on *Johnson v. Baltimore Police Dep't*, CV SAG-
     18-2375, 2021 WL 1610152, at *5 (D. Md. Apr. 23, 2021) is indicative of their misunderstanding of
26    the operative law.  *Johnson* makes clear that Plaintiffs cannot bring a standalone claim under PIPA.
     In *Johnson,* the court recognized that dismissal is appropriate where the relevant Maryland statutes
27    do not provide for a "separate and distinct cause of action."  *Id.*  A violation under PIPA "is an unfair
     or deceptive trade practice within the meaning of [the MCPA]" and "is subject to the enforcement
28    and penalty provisions contained in [the MCPA]."  Md. Code Ann., Comm. Law Art. § 14-3508.

1

### J.   PLAINTIFFS' NEGLIGENCE CLAIM FAILS.

2      Plaintiffs argue that Apple "owes a duty to protect its customers from harm if it had actual

3   or constructive notice of the condition" and failed to remedy it or could have discovered the

4   condition in the exercise of ordinary care.  Opp. 21-22.  Yet the FAC has no well-pleaded allegations

5   to support an inference that Apple had any knowledge—at the time Plaintiffs downloaded Toast

6   Plus—that it was a spoofing app that would steal Plaintiffs' cryptocurrency.  Contrary to Plaintiffs'

7   arguments, Apple did not owe a duty to prevent any or all potential harm to Plaintiffs or all fraud or

8   unforeseeable criminal conduct.  *See, e.g.*, *Diaz v. Intuit, Inc.*, 5:15-CV-01778-EJD, 2018 WL

9   2215790, at *5 (N.D. Cal. May 15, 2018) ("[C]ourts have consistently refused to impose a duty of

10   care in the context of financial transactions involving fraud and identity theft.").[9]  Furthermore, while

11   Plaintiffs seek to avoid the economic loss doctrine by asserting "loss of time," this exception to the

12   economic loss rule has been applied solely in the limited context of a data breach resulting in the

13   loss of plaintiff's personal information.  *See Bass v. Facebook, Inc.*, 394 F. Supp. 3d 1024, 1035

14   (N.D. Cal. 2019) (discussing "loss of time" in "rectifying the aftermath of a data breach"); *Mehta*,

15   2021 WL 6882377, at *5 (same).  Those cases are far different than here where Plaintiffs seek to

16   recover only the "lost value" or "actual damages" of their time spent attempting to recover their lost

17   digital currency—a purely economic damage.  FAC ¶¶ 57-58; 19.  Where, as here, Plaintiffs seek to

18   recover actual damages for the value of their time, "the cost of lost time is an economic harm not

19   recoverable under the economic loss doctrine."  *Gardiner*, 2021 WL 2520103, at *8 (collecting cases

20   and finding "Plaintiff's allegations about the value of his lost time constitutes economic loss"). This

21   is not a data breach case where losses may be ongoing and there could be risk of future identity theft.

22   The exception to the economic loss rule in *Bass* and its progeny is inapplicable, and the claim for

23   negligence should be dismissed with prejudice.

### III.   CONCLUSION

24

25      For the foregoing reasons, Apple respectfully requests dismissal of the FAC with prejudice.

26

---

27   [9] Plaintiffs repeat their argument that agreements that waive "liability for future gross negligence are
     unenforceable."  Opp. 22 (quoting *R.H. v. Los Gatos Union Sch. Dist.*, 33 F. Supp. 3d 1138, 1168
28   (N.D. Cal. 2014)).  Plaintiffs have not pleaded negligence, let alone gross negligence.

1

Dated: July 1, 2022                          **DLA PIPER LLP (US)**

2

By: /s/ *Isabelle Ord*

3                                                      ISABELLE L. ORD
                                                       Attorneys for Defendant APPLE INC.
4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28